1

2

3    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
4                AT TACOMA

5    TINA T.,                            CASE NO. C19-6215 BHS

6                        Plaintiff,      ORDER REVERSING AND
                                         REMANDING DEFENDANT'S
7          v.                            DENIAL OF BENEFITS

     COMMISSIONER OF SOCIAL
8    SECURITY,

9                        Defendant.

10
                         I.    BASIC DATA
11
     Type of Benefits Sought:
12
           (X) Disability Insurance
13
           (X) Supplemental Security Income
14
     Plaintiff's:
15
           Sex:  Female
16
           Age:  22 at the time of alleged disability onset.
17
     Principal Disabilities Alleged by Plaintiff:  Posttraumatic stress disorder ("PTSD"), major
18   depressive disorder, anxiety, learning disorder, reading disorder, mathematics disorder,
     disorder of written expression, chronic back pain, and chronic migraines.  Admin. Record
19   (Dkt. # 9) at 236.

20   Disability Allegedly Began:  January 15, 2016

21   Principal Previous Work Experience:  Order puller, laborer; data entry clerk; and loading
     clerk.  *See* AR at 35, 220.

22

1  Education Level Achieved by Plaintiff:  GED

2  ## II.   PROCEDURAL HISTORY—ADMINISTRATIVE

3  Before Administrative Law Judge ("ALJ") Melissa Warner:

4  Date of Hearing:  November 9, 2018

5  Date of Decision:  January 24, 2019

6  Appears in Record at:  AR at 28–37

7  Summary of Decision:

8  The claimant has not engaged in substantial gainful activity since
January 15, 2016, the alleged onset date.  *See* 20 C.F.R. §§ 404.1571–76,
9  416.971–76.

10  The claimant has the following severe impairments:  PTSD, major
depressive disorder, and learning disorder.  *See* 20 C.F.R. § 404.1520(c),
11  416.920(c).

12  The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the listed
13  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R.
§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

14

15  The claimant has the residual functional capacity ("RFC") to
perform the full range of work at all exertional levels but with non-
16  exertional limitations of no climbing ladders, ropes, or scaffolds, and no
exposure to obvious hazards.  She can understand, carry out, and remember
17  simple instructions where the pace of productivity is dictated by an external
source over which the claimant has no control, such as an assembly line or
18  conveyor belt.  She can make judgments on simple work.  She can respond
appropriately to usual work situations and changes in a work setting that is
19  very repetitive from day to day with few and expected changes.  She can
respond appropriately to supervision but not with the general public.  She
20  can have occasional contact with coworkers where there is no working in
teams or tandem with coworkers.

21  The claimant is unable to perform any past relevant work.  *See* 20
C.F.R. §§ 404.1565, 416.965.

22

ORDER - 2

The claimant was a younger individual (age 18–49) on the alleged disability onset date.  *See* 20 C.F.R. §§ 404.1563, 416.963.

The claimant has at least a high school education and is able to communicate in English.  *See* 20 C.F.R. §§ 404.1564, 416.964.

Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  *See* Social Security Ruling 82–41; 20 C.F.R. Part 404, Subpart P, App'x 2.

Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2016, through the date of the ALJ's decision.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

Before Appeals Council:

Date of Decision:  December 9, 2019

Appears in Record at:  AR at 1–4

Summary of Decision:  Denied review.

### III.      PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

### IV.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Ford v. Saul*, 950 F.3d 1141,

1153–54 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V.    EVALUATING DISABILITY

Plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national

economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner.  *Id.*

## VI.    ISSUES ON APPEAL

A.    Whether the ALJ erred in discounting Plaintiff's symptom testimony.

B.    Whether the ALJ erred in discounting the opinions of examining psychologist Terilee Wingate, Ph.D.

C.    Whether the ALJ erred in assessing Plaintiff's RFC.

## VII.    DISCUSSION

**A.    The ALJ Harmfully Erred in Discounting Plaintiff's Testimony**

Plaintiff argues the ALJ erred by discounting her subjective symptom testimony.  Pl. Op. Br. (Dkt. # 11) at 7–12.  Plaintiff testified she has severe anxiety and PTSD.  AR at 74.  Plaintiff testified she cannot focus for more than two hours, and often can only focus for 20 minutes at a time.  *See* AR at 75, 229.  She testified she needs regular reminders for tasks and items she needs when she goes grocery shopping. AR at 75, 85.  She testified she is not taking any medications because she does not want to become addicted to anything.  *Id.*  Plaintiff testified she has panic attacks, and flashbacks three to four times a week.  *See* AR at 76, 224.

1    The Ninth Circuit has "established a two-step analysis for determining the extent

2    to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871

3    F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has

4    presented objective medical evidence of an impairment that "'could reasonably be

5    expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v.*

6    *Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  At this stage, the claimant need only

7    show that the impairment could have caused some degree of the symptoms; she does not

8    have to show that the impairment could reasonably be expected to cause the severity of

9    symptoms alleged.  *Id.*  The ALJ found Plaintiff met this step because her medically

10   determinable impairments could reasonably be expected to cause the symptoms she

11   alleged.  AR at 33.

12       If the claimant satisfies the first step, and there is no evidence of malingering, the

13   ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing

14   reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678

15   (quoting *Garrison*, 759 F.3d at 1014–15).  In evaluating the ALJ's determination at this

16   step, the Court may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885

17   F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial

18   evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's

19   testimony fail.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

20       The ALJ discounted Plaintiff's testimony because the severity of symptoms

21   alleged was inconsistent with the level of treatment she received, and because the

22

1    evidence showed improvement with treatment.  *See* AR at 34. Neither of these reasons

2    withstands scrutiny.

3           The ALJ erred in rejecting Plaintiff's testimony based on an alleged inconsistency

4    between the severity of symptoms alleged and the level of treatment received.  An ALJ

5    may consider the level of treatment a claimant receives, but must also consider the

6    overall circumstances and nature of the claimant's symptoms.  *See Ghanim v. Colvin*, 763

7    F.3d 1154, 1164 (9th Cir. 2014) (noting "treatment records must be viewed in light of the

8    overall diagnostic record"). The Ninth Circuit has "particularly criticized the use of a lack

9    of treatment to reject mental complaints both because mental illness is notoriously

10   underreported and because 'it is a questionable practice to chastise one with a mental

11   impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Regennitter v.*

12   *Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting *Nguyen*

13   *v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  The ALJ primarily took issue with the

14   fact that Plaintiff was not taking any medications for her psychological symptoms.  *See*

15   AR at 34.  But Plaintiff testified she was not taking medications because she was scared

16   of becoming addicted due to family history.  *See* AR at 75, 85.  Whether or not this was a

17   rational fear, the ALJ could not reject Plaintiff's testimony based on her lack of

18   medication treatment, at least without clear analysis of the issue.

19          The ALJ also erred in rejecting Plaintiff's testimony based on her alleged

20   improvement with treatment.  *See* AR at 34.  "Reports of improvement in the context of

21   mental health must be interpreted with an understanding of the patient's overall well-

22   being and the nature of her symptoms" as well as "an awareness that improved

1    functioning while being treated and while limiting environmental stressors does not

2    always mean that a claimant can function effectively in a workplace." *Garrison*, 759

3    F.3d at 1017 (internal quotation marks and citations omitted).  The ALJ did not clearly

4    identify any evidence showing Plaintiff improved to the level that she could function

5    effectively in a workplace.  Plaintiff, for example, changed therapists shortly before the

6    date through which her medical records run because she got upset when her therapist

7    "pointed out and challenged statements [Plaintiff] made indicating her belief about her

8    lack of control over her anxiety."  AR at 422.  Plaintiff continued to report flashbacks,

9    racing thoughts, and panic-like symptoms through the most up-to-date medical records.

10   *See* AR 410.  The ALJ thus erred in rejecting Plaintiff's testimony based on alleged

11   improvement with treatment.  Consequently, the ALJ failed to give any clear and

12   convincing reasons for rejecting Plaintiff's symptom testimony, and harmfully erred.

13   **B.**      **The ALJ Harmfully Erred in Discounting Dr. Wingate's Opinions**

14          Plaintiff argues the ALJ erred by discounting Dr. Wingate's opinions.  Pl. Op. Br.

15   at 4–7.  Dr. Wingate examined Plaintiff in August 2017.  *See* AR at 291–98.  Dr. Wingate

16   conducted a clinical interview, mental status exam, and several psychological tests.  *See*

17   *id.*  Dr. Wingate opined Plaintiff had marked limitations in her ability to perform

18   activities within a schedule, maintain attendance, ask simple questions or request

19   assistance, communicate effectively and maintain appropriate behavior in a work setting,

20   and complete a normal work day or week without interruptions from her psychologically-

21   based symptoms.  *See* AR at 293.

22

1    The ALJ rejected Dr. Wingate's opinions because she found them inconsistent

2  with Dr. Wingate's mental status exam findings.  *See* AR at 34.  The ALJ reasoned

3  Plaintiff's "mental status examination was completely benign except for some difficulty

4  interpreting a proverb," which was "inconsistent with Dr. Wingate's opinion of

5  moderate-to-marked limitations."  *Id.*

6    The Commissioner argues new regulations promulgated in 2017 change the

7  standard by which the ALJ's reasons for rejecting Dr. Wingate's opinions are measured.

8  *See* Def. Resp. Br. (Dkt. # 12) at 6–8.  The regulations applicable to cases filed before

9  March 27, 2017 set out a hierarchy for treatment of opinion evidence—consistent with

10  Ninth Circuit case law—in which more weight should generally be given to the opinion

11  of a treating doctor than to an examining doctor, and more weight to the opinion of an

12  examining doctor than to a non-examining doctor.  *See Lester v. Chater*, 81 F.3d 821, 830

13  (9th Cir. 1996); 20 C.F.R. §§ 404.1527, 416.927.  This hierarchy underlies the

14  requirement in the Ninth Circuit that an ALJ must provide clear and convincing reasons

15  to reject an uncontradicted doctor's opinion and specific and legitimate reasons where the

16  record contains a contradictory opinion. *See Murray v. Heckler*, 722 F.2d 499, 501–02

17  (9th Cir. 1983); *see also Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at

18  *3 (W.D. Wash. Apr, 9, 2020).

19    In 2017, the Commissioner revised its regulations to eliminate the hierarchy of

20  medical opinions.  *See* Revisions to Rules Regarding the Evaluation of Medical

21  Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Under the new regulations, for claims

22  filed on or after March 27, 2017, the Commissioner "will not defer or give any specific

1  evidentiary weight . . . to any medical opinion(s) . . . including those from [the

2  claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

3       The Ninth Circuit has not yet stated whether it will continue to require an ALJ to

4  provide "clear and convincing" or "specific and legitimate" reasons for rejecting medical

5  opinions given the Commissioner's elimination of the hierarchy.  The Commissioner's

6  new regulations still require the ALJ to explain his or her reasoning, and to specifically

7  address how he or she considered the supportability and consistency of the opinion.  *See*

8  20 C.F.R. §§ 404.1520c, 416.920c.  Obviously the ALJ's reasoning must remain

9  legitimate, meaning lawful or genuine, *see Black's Law Dictionary* (11th ed. 2019), as it

10  must still be supported by substantial evidence and free from legal error, *see Ford*, 950

11  F.3d at 1153–54 (citing *Tommasetti*, 533 F.3d at 1038).  The Court will therefore

12  consider whether the ALJ specifically and legitimately explained how she considered the

13  supportability and consistency factors regarding Dr. Wingate's opinions.

14       The ALJ failed to specifically and legitimately explain her rejection of Dr.

15  Wingate's opinions.  The ALJ correctly noted Dr. Wingate's mental status exam

16  produced largely benign results.  *See* AR at 34, 294–95.  But that is only one piece of the

17  diagnostic picture. Dr. Wingate also conducted a clinical interview, made clinical

18  findings, and administered psychological tests.  *See* AR at 291–93, 296–98.  The ALJ did

19  not address this evidence, or explain why the mental status exam findings outweighed

20  these other diagnostic measures.  And the ALJ gave no further explanation for her

21  consideration of Dr. Wingate's opinions.  Such scant analysis does not adequately

22

1    address how well-supported or consistent Dr. Wingate's opinions were.  The ALJ

2    therefore harmfully erred in rejecting Dr. Wingate's opinions.

3    **C.**    **The ALJ Harmfully Erred in Assessing Plaintiff's RFC**

4         Plaintiff argues the ALJ failed to fully capture in the RFC the opinions of two non-

5    examining doctors, which the ALJ purported to accept.  Pl. Op. Br. at 3–4.  Jon

6    Anderson, Ph.D., who reviewed records as part of the Social Security Administration's

7    ("SSA") initial determination of Plaintiff's claims, and Christmas Covell, Ph.D., who

8    reviewed records as part of the SSA's reconsideration determination, opined Plaintiff was

9    "moderately limited" in her ability to complete a normal work day or week without

10   interruptions from her symptoms, and perform at a consistent pace without an

11   unreasonable number and length of rest periods.  AR at 104, 132.  Dr. Anderson

12   explained Plaintiff was "[a]ble to carry out work tasks for two hour increments with

13   occasional lapse in attention, concentration and attendance due to continued anxiety

14   [symptoms]." AR at 104.  Dr. Covell explained Plaintiff "would have occasional

15   difficulties in maintaining attention, concentration, pace [and] persistence . . . when

16   symptomatic," but she remained capable of "sustaining simple tasks . . . w[ith] reasonable

17   [concentration, pace, and persistence], attending work w[ith]in customary tolerances,

18   working w[ith]in a routine, and completing a normal workday/week."  AR at 132.

19        Plaintiff argues these opinions are inconsistent with the RFC, which states she can

20   follow simple instructions "where the pace of productivity is dictated by an external

21   source over which [Plaintiff] has no control, such as an assembly line or conveyor belt."

22   AR at 32.  Plaintiff focuses on the doctors' use of the word "occasional," which Social

1    Security Ruling ("SSR") 96–9p defines as "occurring from very little up to one-third of

2    the time."  See SSR 96–9p, 1996 WL 374185, at *3 (July 2, 1996).  The vocational expert

3    testified that employers typically tolerate employees being off tasks no more than 10

4    percent of the time.  AR at 92.

5          The Court agrees the ALJ erred in formulating the RFC.  The ALJ failed to

6    properly evaluate Plaintiff's symptom testimony and Dr. Wingate's opinions.  *See supra*

7    Parts VII.A–B.  The Court need not decide, however, whether the RFC adequately

8    captured the opinions of Dr. Anderson and Dr. Covell.  The term "occasional" maintains

9    enough ambiguity that its use does not clearly establish Plaintiff would be unable to

10   work.  Neither doctor stated where in the "occasional" range of very little up to one-third

11   of the time Plaintiff fell, so the Court cannot decide whether Plaintiff would fall within

12   the 10 percent off-task time allowed.  Regardless, the ALJ must reassess Plaintiff's RFC

13   on remand, after properly evaluating Plaintiff's symptom testimony and Dr. Wingate's

14   opinions.  The ALJ should also resolve the ambiguity in the use of "occasional" on

15   remand as necessary.

16   **D.     Scope of Remand**

17         Plaintiff asks the Court to remand this matter for an award of benefits.  Pl. Op. Br.

18   at 12–16.  Remand for an award of benefits "is a rare and prophylactic exception to the

19   well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir.

20   2017).  The Ninth Circuit has established a three-step framework for deciding whether a

21   case may be remanded for an award of benefits.  *Id.* at 1045.  First, the Court must

22   determine whether the ALJ has failed to provide legally sufficient reasons for rejecting

1    evidence.  *Id.* (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine

2    "whether the record has been fully developed, whether there are outstanding issues that

3    must be resolved before a determination of disability can be made, and whether further

4    administrative proceedings would be useful."  *Treichler v. Comm'r of Soc. Sec. Admin.*,

5    775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotation marks and citations omitted).  If

6    the first two steps are satisfied, the Court must determine whether, "if the improperly

7    discredited evidence were credited as true, the ALJ would be required to find the

8    claimant disabled on remand."  *Garrison*, 759 F.3d at 1020.  "Even if [the Court]

9    reach[es] the third step and credits [the improperly rejected evidence] as true, it is within

10   the court's discretion either to make a direct award of benefits or to remand for further

11   proceedings."  *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

12          The appropriate remedy here is to remand this matter for further administrative

13   proceedings.  As explained above, there remains ambiguity in Dr. Anderson's and Dr.

14   Covell's opinions regarding their use of the word "occasional."  *See supra* Part VII.C.

15   Moreover, conflicts in the evidence remain, such as differences among Dr. Anderson's,

16   Dr. Covell's, and Dr. Wingate's opinions.  *See* AR at 103–05, 131–33, 291–98.  The

17   Court cannot weight these opinions, nor can it translate them into an RFC and determine

18   whether Plaintiff can perform work.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d

19   996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th

20   Cir. 2008)) ("[T]he ALJ is responsible for translating and incorporating clinical findings

21   into a succinct RFC.").  Remand is therefore necessary.

22

1  On remand, the ALJ shall reevaluate Plaintiff's symptom testimony, Dr.

2  Anderson's opinions, Dr. Covell's opinions, and Dr. Wingate's opinions.  The ALJ shall

3  reassess Plaintiff's RFC, and reassess the step four and five determinations.  The ALJ

4  shall conduct all further proceedings necessary to reevaluate the disability determination

5  in light of this decision.

6  ### VIII.    ORDER

7  Therefore, the Commissioner's final decision is REVERSED and this case is

8  REMANDED for further administrative proceedings under sentence four of 42 U.S.C. §

9  405(g).

10  Dated this 24th day of July, 2020.

11

12  _____

13  BENJAMIN H. SETTLE
United States District Judge

14

15

16

17

18

19

20

21

22

ORDER - 14